1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10  RICARDO CAPELLO,

11                  Plaintiff,

12          v.

13  LESLIE SZIEBERT, GALINA DIXON,
    KELLY CUNNINGHAM, HENRY
14  RICHARDS, RANDALL GRIFFITH,
    HOWARD WELSH, PAUL
15  TEMPOSKY, and WILLIAM BAILEY,

16                  Defendant.

CASE NO. C13-5275 BHS-JRC

REPORT AND RECOMMENDATION

NOTED FOR MAY 23, 2014

17

18

19

20

21

22

23

24

This 42 U.S.C. §1983 civil rights matter has been referred to the undersigned Magistrate

Judge pursuant to 28 U.S.C. §§ 636 (b) (1) (A) and (B) and Local Magistrate Judge Rules MJR

1, MJR 3, and MJR 4.

Defendant Dixon filed a summary judgment motion separate from the majority of

defendants (Dkt. 71). The Court recommends granting defendant Galina Dixon's motion for

summary judgment because plaintiff fails to show that this defendant violated any constitutional

right or duty regarding medical treatment that defendant owed to him. There are preliminary

1 | matters, raised by the parties in objections, which the Court must address before it sets forth the

2 | facts.

3 | <u>PRELIMINARY MATTERS</u>

4 |     Plaintiff moves to strike the summary judgment motions and claims he did not receive the

5 | warnings mandated by the Ninth Circuit (Dkt. 100).  Defendants move to strike portions of

6 | plaintiff's over-length response (Dkt. 85, p. 2) and (Dkt. 86, p. 2).

7 |     On the same day that defendant Dixon's summary judgment was filed, the other

8 | defendants moved for summary judgment (Dkt. 75).  These other defendants provided plaintiff

9 | with warnings regarding dispositive motions (Dkt. 83).  Defendant Dixon did not provide a

10 | separate warning notice to plaintiff.  Plaintiff filed a thirty one page response to the motions for

11 | summary judgment with over four hundred pages of exhibits and several hundred more pages of

12 | affidavits (Dkt. 88 to 99).

13 |     A.    Warnings regarding dispositive motions.

14 |     The record clearly indicates that plaintiff was fully aware of the warnings required by the

15 | Ninth Circuit – even though defendant Dixon did not send them (*see* Dkt 83)  Further, the two

16 | summary judgment motions were filed on the same day (Dkt. 71 and 75).  Thus, Plaintiff

17 | received the proper warnings contemporaneously with the filing of both motions for summary

18 | judgment.  Plaintiff fails to show prejudice.  The Court denies Plaintiff's motion to strike the

19 | pending summary judgment motions.

20 |     B.    Over-length briefing.

21 |     Local Rules 7(e) limits the parties' responses to dispositive motions to 24 pages.  Plaintiff

22 | did not seek leave of Court to file an over-length brief.  Plaintiff's responsive brief is 31 pages

23 | (Dkt. 87).  The Court expects all parties -- pro se and those represented by counsel -- to comply

24 |

1   with the Court's procedural rules.  Defendants would be prejudiced by plaintiff being given

2   additional pages to respond to dispositive motions.  The Court grants defendant's motion.  The

3   Court will not consider pages 25 to 31 of plaintiff's response.

4                                          <u>FACTS</u>

5          Plaintiff is a resident of the Washington State Special Commitment Center located on

6   McNeil Island.  Plaintiff brings this action alleging that the medical care and special diet he

7   received were constitutionally inadequate.  Plaintiff's medical claims relate to the treatment he

8   received for three medical conditions: Hepatitis C, enlarged prostate, and Meniere's disease

9   (Dkt. 5).  A portion of the medical treatment for Meniere's disease involved a low sodium diet

10  (Dkt. 5, p. 14, ¶ 6.9).  Meniere's disease is an ear condition where the ear retains salt.  The

11  condition results in dizziness or vertigo which may cause vomiting, ringing in the ears, and loss

12  of hearing (Dkt. 76, Exhibit V).

13         Defendant Galina Dixon is an Advanced Registered Nurse Practitioner.  She is an

14  independent contractor with the Department of Social and Health Services assigned to work on

15  McNeil Island where the Special Commitment Center is located (Dkt. 72, Affidavit of Dixon ¶

16  2).  Defendant Dixon began working at the Special Commitment Center in December of 2012

17  (*id*. at ¶ 3).

18         Defendant Dixon's job duties include providing primary care to residents, assessing

19  patients, ordering further treatment including diagnostic tests and lab work, and requesting

20  consultations with specialists (Dkt. 72, Affidavit of Dixon ¶ 2).  Most of the specialists that

21  defendant Dixon contacted in this case do not work on McNeil Island (*id*.).

22         Defendant Dixon sets forth her interactions with plaintiff and provides medical records

23  regarding her encounters with him.  All of plaintiff's medical conditions pre date the time

24

REPORT AND RECOMMENDATION- 3

1    defendant Dixon began working at the Special Commitment Center.  Plaintiff has not contested

2    the accuracy of defendant Dixon's assertions regarding her interactions with him or the treatment

3    she provided.  These interactions are summarized in defendant Dixon's affidavit (Dkt. 72).

4       A.  Hepatitis C treatment.

5       Defendant saw plaintiff on December 6, 2012 and referred him to Dr. Mulhall for a

6    review of colonoscopy results (Dkt. 72 affidavit of Dixon ¶ 5).  Dr. Mulhall saw plaintiff within

7    one week (*id.* at ¶ 6).  Dr. Mulhall also saw plaintiff regarding hepatitis C and ordered that

8    plaintiff receive evaluations by three specialists in preparation for treatment of hepatitis C.  The

9    specialists were a cardiac specialist, an ophthalmologist, and a psychiatrist (*id.*).

10      On December 17, 2012, within six days of Dr. Mulhall's order, defendant Dixon met with

11   plaintiff and began the process of receiving the ordered consults (*id.* at ¶ 7).  The first and easiest

12   of the consults for defendant Dixon to arrange was the psychiatric consult (*id.*).  This

13   consultation was the easiest for defendant Dixon to arrange because it took place on McNeil

14   Island and was performed by defendant Sziebert.  Defendant Dixon requested the consult on

15   December 27, 2012 and the consult occurred on January 7, 2013 (*id.* at ¶ 8).

16      By the end of January, defendant Dixon had prepared and submitted the requests for both

17   the cardiac and ophthalmologist consultations, as well (*id.* at ¶ 9).  Defendant Dixon states that

18   she does not have the authority to approve or reject the consultations, only to request them (*id.* at

19   ¶ 10).  Defendant Dixon also states that she does not schedule off-island appointments or the

20   transportation to the appointments (*id.*).  Defendant Dixon states that off-island appointments

21   must be coordinated through the Special Commitment Center administration and security (*id.*).

22      Plaintiff had his cardiac assessment on March 2, 2013 (*id.* at ¶ 11).  Defendant Dixon

23   made a second request for an Ophthalmology consultation on April 2, 2013 and the consultation

24

REPORT AND RECOMMENDATION- 4

1    occurred on April 8, 2013.  One week later, on April 15, 2013, defendant Dixon met with

2    plaintiff to schedule additional lab work and a meeting with Dr. Mulhall for final approval prior

3    to plaintiff starting his hepatitis C treatment (*id*.).

4         Defendant Dixon states that the lab work was completed by April 18, 2013 and she spoke

5    with Dr. Mulhall's office on April 29, 2013 about scheduling plaintiff for educational sessions on

6    hepatitis C treatment (*id.* at ¶¶ 14 and 15).

7         Defendant Dixon states that she spoke with plaintiff the next day, April 30, 2013 and

8    informed him of both his test results and her contact with Dr. Mulhall's office.  The educational

9    sessions apparently did not take place and on July 29, 2013, defendant Dixon states that she

10   again attempted to contact Dr. Mulhall's office.  Defendant also states that she spoke with Dr.

11   Mulhall's office on July 31, 2013 and requested that plaintiff be allowed to start treatment

12   without the educational sessions because he had been well informed of the potential side effects

13   of the treatment (Dkt. 72 Affidavit of Dixon ¶ 17).

14        Defendant Dixon states that she met with Dr. Szeibert and RN Dietch to discuss starting

15   plaintiff on hepatitis C treatment and they all agreed that plaintiff was knowledgeable about both

16   the disease and the proposed treatment (*id*.).  Defendant Dixon states that she informed plaintiff

17   on August 26, 2013 that his treatment would begin September 9, 2013 (*id*. at ¶ 18).  Defendant

18   Dixon indicates that recent testing shows that the treatment has been effective and plaintiff's

19   "viral load" is now insignificant (*id*.).

20        Plaintiff has not provided evidence to contradict any of these assertions of fact.

21        B.      Enlarged prostate.

22

23

24

1       Defendant Dixon gave plaintiff a prostate examination on March 12, 2013 (Dkt. 72,

2 Affidavit of Dixon, pp. 4-5 ¶ 19.  Defendant Dixon ruled out plaintiff having cancer because she

3 found "no palpable nodules, induration, or irregularities associated with cancer." (*Id*).

4       Defendant Dixon prescribed Terazosin and recommended a urology consult.  Defendant

5 also started lab work for plaintiff.  Plaintiff's lab work was completed by March 22, 2013 and

6 defendant met with him on March 28, 2013 to discuss the lab work (Dkt. 72, Affidavit of Dixon,

7 p. 5 ¶ 21).

8       On April 30, 2013, defendant again saw plaintiff and he complained of frequent

9 urination. Defendant reminded plaintiff that a urology consultation had been requested.  She also

10 increased plaintiff's Terazosin and ordered a testing of "prostate specific antigens (PSA)." (*Id*).

11 The "(PSA)" showed normal levels (*id*.).

12       Defendant Dixon repeatedly increased plaintiff's Terazosin prescription over the next

13 three months until plaintiff indicated he was feeling better on August 26, 2013 (Dkt. 72,

14 Affidavit of Dixon p. 5, ¶ 23).

15       Defendant Dixon submitted another urology consult in November of 2013 when plaintiff

16 continued to complain of urinary frequency.  Plaintiff was seen and diagnosed as having an

17 overactive bladder.  Another medical provider prescribed Ditropan for plaintiff's condition (Dkt.

18 72, Affidavit of Dixon p. 5¶ 24).

19       Again, plaintiff has not provided evidence to contradict any of these assertions of fact.

20       C.     Meniere's.

21       Defendant Dixon ordered a low sodium diet to treat plaintiff for Meniere's on April 19,

22 2013 (Dkt. 72, p. 6 ¶ 31).  Defendant Dixon also requested an otolarnygology consultation the

23 same day plaintiff stated he had not had one in a number of years (*id*. at ¶ 25).  Defendant Dixon

24

1   resubmitted a consultation request on July 18, 2013.  Plaintiff met with the specialist Dr. Souliere

2   on August 29, 2013 and the doctor recommended an ear canal reposition procedure (*id*. at ¶ 27).

3          After the reposition procedure, defendant Dixon requested another consultation with Dr.

4   Souliere on September 9, 2013.  Defendant also spoke with Dr. Souliere on September 10, 2013.

5   Defendant states that she learned that plaintiff was near totally deaf in his right ear and hearing

6   aids would not help plaintiff except perhaps to help him determine the direction a sound was

7   coming from (*id*. at ¶ 29).   Plaintiff completed repositioning therapy December 13. 2013.

8          On August 26, 2013 plaintiff complained to defendant Dixon that his food tasted salty.

9   Defendant requested a consult with the dietician the same day (Dkt. 72, Affidavit of Dixon p. 6,

10  ¶32).  Plaintiff met with the dietician on September 18, 2013 and has not complained to

11  defendant Dixon regarding his diet since that time (*Id*. at ¶ 35).

12         Again, plaintiff has not contradicted defendant Dixon's assertions of fact (Dkt. 87).

13                                  <u>STANDARD OF REVIEW</u>

14         In federal court, summary judgment is required pursuant to Fed. R. Civ. P. 56(a) if the

15  evidence, viewed in the light most favorable to the nonmoving party, shows that there is no

16  genuine issue as to any material fact.  *Tarin v. County of Los Angeles*, 123 F.3d 1259, 1263 (9th

17  Cir.1997).  The moving party bears the initial burden of establishing the absence of a genuine

18  issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  That burden may

19  be met by "'showing'-- that is, pointing out to the district court -- that there is an absence of

20  evidence to support the nonmoving party's case."  *Id*. at 325.  Once the moving party has met its

21  initial burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and identify

22  facts that show a genuine issue for trial.  *Id*. at 323-24; *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

23  242, 248 (1986).

24

1      Plaintiff confuses the summary judgment standard of review with the standard for

2  motions to dismiss in his response (Dkt. 87, pp. 3-4).  At the summary judgment stage the Court

3  dismisses an action if the moving party has met its burden of proof and the non moving party has

4  failed to come forward with evidence to refute the moving party's contentions.  *Celotex Corp. v.*

5  *Catrett*, 477 U.S. 317, 323-24 (1986).  Contrary to plaintiff's contentions, leave to amend the

6  complaint is not mandated (Dkt. 87, pp. 3-4).

7                                    DISCUSSION

8      Plaintiff is not an inmate and his medical claims are reviewed under the Fourteenth

9  Amendment due process clause rather than under the Eighth Amendment cruel and unusual

10  punishment clause.  However, the Ninth Circuit has stated that the same analysis applies under

11  either clause.  *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir 1998).

12      There are two components to plaintiff's claims that he did not receive adequate medical

13  treatment for his conditions. First, plaintiff must show that the deprivation alleged is, objectively,

14  "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  Second, the state official

15  must have a "'sufficiently culpable state of mind' … [T]hat state of mind is one of 'deliberate

16  indifference' to inmate health or safety." *Id*. (citations omitted).  The state official will be liable

17  only if "the official knows of and disregards an excessive risk to inmate health and safety; the

18  official must both be aware of facts from which the inference could be drawn that a substantial

19  risk of serious harm exists, and he must also draw the inference." *Id*. at 837.

20      The Court has considered the record and plaintiff's claims against defendant Dixon fail.

21  The parties do not contend that plaintiff's medical issues are not serious.  However, plaintiff fails

22  to show that defendant Dixon was deliberately indifferent to any medical issue plaintiff brought

23  to her attention.  In each instance, defendant Dixon ran or reviewed tests, performed

24

1    examinations, provided medical treatment, or requested consultations. Defendant Dixon makes

2    clear that it was not her responsibility to arrange off island transportation for plaintiff or even

3    approve the consultations that she requested (Dkt. 72, ¶ 10).  Further, the record shows that when

4    plaintiff did not get a consultation in a timely manner, defendant Dixon did not hesitate to

5    resubmit a request (Dkt. 72).

6           When there were delays in treating plaintiff for hepatitis C, defendant Dixon went so far

7    as to ask that treatment begin without further delaying the treatment for educational sessions that

8    she and other medical providers believed were unnecessary in plaintiff's case (Dkt. 72, Affidavit

9    of Dixon ¶ 17).

10          Once the moving party has met its initial burden, Rule 56(e) requires the nonmoving

11   party to go beyond the pleadings and identify facts that show a genuine issue for trial.  Plaintiff

12   has failed to meet his burden.  Plaintiff attempts to shift the burden of proof back to defendant

13   Dixon and states that defendants omitted portions of depositions or testimony (Dkt. 87, pp. 6-7).

14   It is plaintiff that has the burden of coming forward with his own evidence to refute defendant's

15   contentions – not defendant's.

16          Plaintiff states that medical records from 2002 to 2005 are missing (Dkt. 87 p. 6).

17   Plaintiff argues that defendants intentionally concealed these records (*id*.).  Plaintiff fails to set

18   forth specific facts to support this allegation and fails to show that defendant Dixon played any

19   part in the alleged concealment of these records.  Further, the records that are allegedly missing

20   are from many years before defendant Dixon began working at the Special Commitment Center

21   in 2012.  These alleged missing records would not address the services that defendant Dixon

22   provided plaintiff (Dkt. 72, ¶ 3).  Plaintiff must allege facts showing how defendant caused or

23

24

REPORT AND RECOMMENDATION- 9

1  personally participated in causing the harm alleged in the complaint.  *Arnold v. IBM*, 637 F.2d

2  1350, 1355 (9th Cir. 1981).

3        Plaintiff argues that defendant failed to monitor him for side effects of medication and

4  failed to obtain his informed consent before treating him for hepatitis C (Dkt. 87. pp. 11).

5  Plaintiff's own affidavit shows that during the time he was under treatment for hepatitis C his

6  blood was frequently drawn and tested and that defendant Dixon monitored his blood work on at

7  least a weekly basis.  (Dkt. 88, pp 24-34).  Plaintiff attempts to interpret the results of his lab

8  work and argues in his affidavit that the blood draws showed "several extremely dangerous

9  abnormalities." (Dkt. 89, p. 34 ¶ 105).  Plaintiff has not shown that he is medically qualified to

10  interpret the reports and has not submitted any medical evidence to support this conclusion.  The

11  Court's review of the record does not show any obviously "extreme dangerous abnormalities,"

12  but again, without an acceptable medical opinion to support this bald assertion, plaintiff has

13  failed to provide specific facts to create a genuine issue of material fact.  Plaintiff has failed to

14  show that defendant Dixon exhibited any deliberate indifference regarding his medical treatment.

15        Plaintiff attempts to alter the standard for reviewing a Fourteenth Amendment medical

16  claim by arguing that state law sets a different standard of care (Dkt. 87, p. 2 *citing* RCW 71.

17  09.080 and WAC 388-880-010(2)).  Plaintiff also argues that his claim is the equivalent of a state

18  medical malpractice claim raised pursuant to RCW 7.70.040 (Dkt. 87, pp. 7-8).  Plaintiff's

19  argument regarding alleged negligence does not meet the standard for a constitutional claim

20  brought pursuant to 42 U.S. C. §1983.  Mere negligence is not enough to support a deliberate

21  indifference claim, instead, plaintiff must show that defendants have purposefully ignored or

22  failed to respond to his pain or medical need in order to establish deliberate indifference.  *Estelle*

23  *v. Gamble,* 429 U.S. 97, 104 (1976).  Negligence in diagnosing or treating a medical condition,

24

1  without more, does not violate a plaintiff's constitutional rights.  *Hutchinson v. United States*,

2  838 F.2d 390, 394 (9th Cir. 1988).

3       Plaintiff fails to show that there is a genuine issue of material fact regarding the health

4  care that defendant Dixon provided.  Plaintiff fails to show that defendant Dixon was

5  deliberately indifferent to plaintiff's medical issues.

6       The undersigned recommends granting defendant Dixon's motion for summary

7  judgment.  Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

8  fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

9  6. Failure to file objections will result in a waiver of those objections for purposes of de novo

10 review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit

11 imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on May

12 23, 2014, as noted in the caption.

13      Dated this 30th day of April, 2014.

14

15      _____

16      J. Richard Creatura
        United States Magistrate Judge

REPORT AND RECOMMENDATION- 11